```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA        *    Case No. 17-MJ-00385(RER)
                                *
                                *    Brooklyn, New York
                                *    May 25, 2017
        v.                      *
                                *
WEI WEI WANG,                   *
                                *
            Defendant.          *
                                *
* * * * * * * * * * * * * * *   *
```

                TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
                  BEFORE THE HONORABLE MARILYN D. GO
                    UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:            GIRISH KARTHIK SRINIVASAN, ESQ.
                              Asst. United States Attorney
                              United States Attorney's Office
                              271 Cadman Plaza
                              Brooklyn, NY 11201


For the Defendant:            MICHAEL PADDEN, ESQ.
                              Federal Defenders of NY, Inc.
                              One Pierrepont Plaza, 16th Fl
                              Brooklyn, NY  11201


Certified Interpreter:        MS. ESTRELITA PLESTED




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 3:44 p.m.)

2              THE CLERK:  Criminal cause for a status conference.

3      Case No. 17-385, United States versus Wei Wei Wang.  Counsel,

4      your name for the record.

5              MR. SRINIVASAN:  Good afternoon, Your Honor.

6      Karthik Srinivasan for the government.

7              MR. PADDEN:  For Ms. Wang, Michael Padden for

8      Federal Defenders.  Actually, Peter Kirchheimer is her

9      attorney, Your Honor, but he is unavailable today.

10             THE CLERK:  Also present is Spanish interpreter,

11     Estrelita Plested, previously, sworn.

12             THE COURT:  All right.

13             MR. SRINIVASAN:  Your Honor, this case was

14     originally here on May 1st as part of removal proceedings to

15     the Southern District of California.  The defendant is

16     charged there with smuggling of shell fish, Abolone sea

17     cucumber.

18             At the time we had an agreed upon bond of $50,000

19     that was signed by this individual, her husband.  I've been

20     informed that he wishes to remove himself from the bond, and

21     there's a bit of a story involving potential contacts with a

22     co-defendant that I think form the basis of this.

23             THE COURT:  Okay.  And that's alluded to in the

24     memorandum that was provided to me from the Pretrial Services

25     Agency.  I assume you've seen the --

3

1          MR. PADDEN:  I've seen that, Judge.

2          THE COURT:  Okay.

3          MR. PADDEN:  But I don't think that was ever a

4     condition of the bond, but we'll get to that I suppose in a

5     moment.

6          THE COURT:  What?  Not -- having contact -- not

7     having contact.

8          MR. PADDEN:  Right.

9          THE COURT:  Okay.  But I guess the initial issue is

10    whether or not there's a viable bail package at this point

11    with the husband.

12         MR. PADDEN:  Right.  And, of course, she didn't

13    know that anything was potentially changing until she went to

14    Pretrial Services today.  I mean, we could substitute a

15    suretor.  She could post potentially a cash bail, and maybe

16    I'm getting a little ahead of myself here, but I actually

17    spoke to Mr. Kirchheimer, you know, so I got a little bit of

18    a background on what had happened here.

19         And he's already been in touch with lawyers and

20    some former colleagues of ours that now work at the San Diego

21    Federal Defender's Office and they're waiting to represent

22    her there.

23         But in any event, Judge, the bottom line is it is

24    clear that her intention is to appear in California on her

25    court date, and that's what she's totally prepared to and

4

1    expecting to do.

2              It seems underlining this from our point of view is

3    some sort of domestic dispute between her and her husband

4    that has prompted his inclination to come off the bond.  That

5    said, you still have her signed on a 50,000 PRV, and she will

6    bring in additional suretors or one suggestion I have was

7    perhaps if you wanted to put her on an electronic monitoring

8    and to say -- Mr. Kirchheimer will be back on Tuesday.  In

9    fact, he's on duty on Tuesday.  And we talked about it.

10             Whatever you want to do in terms of conditions

11   between now and then, we could probably have a very viable

12   package, alternative package.  We didn't need one, because we

13   have her husband here to sign for her in the initial

14   instance.  But he was prepared to offer alternative packages

15   and he will do so on Tuesday.

16             MR. SRINIVASAN:  Well, Your Honor --

17             THE COURT:  Well, I think as a preliminary matter,

18   let's just -- let me state that if -- if the husband, Mr. Fei

19   Long, does not wish to remain on the bond, I'm not going to

20   force him to remain on the bond.

21             So, and in my view, given --

22             MR. PADDEN:  I was jumping ahead to the ultimate

23   issue, I guess.

24             THE COURT:  -- given that this is a removal case,

25   it's generally not only advisable for the defendant, but it's

1    -- it's frequently appropriate to have a secured bond.

2             MR. SRINIVASAN:  I -- Your Honor, that would be our

3    position.  And it just takes -- two aspects.

4    ``One, this individual is a -- the defendant is a Taiwanese

5    national.  As far as we know, she doesn't have strong ties

6    here.  I think she resided in Mexico for a significant period

7    of time, 2as actually on an outbound flight to Mexico City at

8    the time of her arrest.

9             So I think all of her contacts are there.  And so I

10   do think remand would be appropriate.

11            On the additional piece about contacts with the co-

12   defendant, if the Court wants, I think it might be

13   appropriate to ask the surety himself, because he's the one

14   who overheard this, and that might also give the Court some

15   pauses to risk of flight in addition to -- if there are any

16   other issues.

17            MR. PARDON:  Well, she has business in Mexico.  I

18   mean, in fact, there was a question about Mr. Kirchheimer

19   advised her that she couldn't go to Mexico.

20            It may well be that that's what she was explaining

21   to her business associate if, in fact, he wanted her to come

22   to Mexico.

23            But she knows very well she can't go to Mexico

24   until, you know, the case is resolved in California.  And

25   that was what she was proceeding towards until today, I

6

1    guess.

2              THE COURT:  Okay.  Well, the memo from the Pretrial

3    Services Agency is a little confusing, because it talks about

4    Mr. Long overhearing a telephone conversation, and then

5    explaining to the defendant -- anyway, why don't we just

6    swear Mr. Long and I'll just clarify on the record what

7    information he has.

8              (Mr. Long is sworn.)

9              THE CLERK:  Please state your name for the record

10   and speak loudly to the recording.  Your name?

11             MR. LONG:  Fei Long.

12             THE CLERK:  Thank you.

13             THE COURT:  Okay.  Mr. Long, I have a memorandum

14   here from Pretrial Services stating that you called Pretrial

15   Services and advised them of a telephone conversation you

16   heard between -- that you overheard involving your wife?

17             MR. LONG:  Not really I heard a conversation.  But

18   everything she told -- what I say about this paper is she

19   told me she had a conversation with her ex-boyfriend about

20   different options.  So make me pretty nervous about my

21   security deposit.  And I can't (inaudible) money (inaudible)

22   --

23             THE COURT:  Okay.  So --

24             MR. LONG:  -- (inaudible).

25             THE COURT:  So, Mr. Alan Ren is her ex-boyfriend?

1          MR. LONG:  Is her ex-boyfriend.

2          THE COURT:  It's her ex-boyfriend?

3          MR. LONG:  Yes.

4          THE COURT:  Okay.  And so -- so one of the options

5     was to flee; is that what you're telling me?

6          MR. LONG:  Yeah.

7          THE COURT:  Okay.  Now, did she indicate --

8          MR. LONG:  The remission -- she was was kind of

9     vulnerable as well, so I just want off the bond.

10          MR. PADDEN:  No.  I understand.  I respect that,

11     Judge, but --

12          THE COURT:  Okay.  Now, I just want to know exactly

13     what you were told about the conversation that your wife had

14     with Mr. Ren.  What did she say more specifically?

15          MR. LONG:  Oh, what did she say?

16          THE COURT:  Yes.  What did she tell you about the

17     conversation she had?

18          MR. LONG:  She came in joking about she have a

19     conversation with Alan.  Alan instructed her and -- because

20     it's just a walk across the border with no passport.  And she

21     could apply for a new passport with her (inaudible), then she

22     would never go back to USA.

23          So she knew (inaudible) all the trouble.  And he

24     was (inaudible) lead another life here or in Taiwan or

25     Mexico.  And it's not really about what she said.  It's about

8

1          -- more about our relationship --

2                    THE COURT:  Okay.

3                    MR. LONG:  -- is not working out.

4                    THE COURT:  All right.

5                    MR. LONG:  So I just want off the bond.

6                    THE COURT:  Okay.  Fine.  Okay.  Yes.  I'll let you

7          off the bond, and I think, though, you do need a new bond

8          package.

9                    MR. PADDEN:  Yeah.  We'll have one, Judge.  We'll

10         certainly have one if we're given any opportunity to, and I'm

11         just suggesting give us until Tuesday with whatever

12         conditions you wish and Mr. Kirchheimer will be here and be

13         in touch with family, and perhaps he could propose --

14                   MR. LONG:  Ah --

15                   MR. PADDEN:  -- offer a --

16                   MR. LONG:  -- can I say something?

17                   MR. PADDEN:  Not until I finish, please.

18                   MR. LONG:  Sorry.

19                   MR. PADDEN:  And, you know, present a package that

20         could involve additional or other suretors or potentially

21         cash, which I think that she may well be able to gather up

22         within the next several days if you -- if she'd be permitted

23         to.

24                   And like I said, this all comes a little of a

25         surprise to her, and I think he's even explained to you that

9

1    there's more of an issue (inaudible).  I think the Court gets

2    what's going on here.  There was no plot here.  It's just --

3              THE COURT:  Okay.  No, no.

4              MR. PADDEN:  -- a bad situation.

5              THE COURT:  I mean, I think -- I think Mr. Long

6    said it all that the -- it's -- he just no longer wants to

7    be --

8              MR. PADDEN:  Right.  No, and I get that, Judge.  I

9    just --

10             THE COURT:  -- her surety.

11             MR. PADDEN:  -- I'm just asking to give us a chance

12   to give you new package.

13             THE COURT:  Okay.  Not a problem.

14             MR. SRINIVASAN:  Your Honor, we would ask for a

15   remand in the meantime.

16             MR. PADDEN:  And I think that's ridiculous frankly,

17   given the nature of the charges.  Given, you know, no other

18   concerns about her.  Given her plans to go to California.

19   Given the fact that we've already been in touch with counsel

20   out there.

21             I don't think she's in any other violation of any

22   reporting requirements since she's been released, and that's

23   been almost a month now.   It seems there's no basis to put

24   the harsh sanction of remand on her right now.

25             MR. SRINIVASAN:  You --

1          MR. PADDEN:  I assume they have all her travel

2    documents.  She's not going anywhere other than San Diego.

3          THE COURT:  Well, it says in the memorandum that

4    Ms. Wang packed a bag and left after this conversation, Mr.

5    Long.

6          MR. LONG:  She wasn't-- pack her luggage.  She just

7    carry her -- the backpack.

8          THE COURT:  A backpack?

9          MR. LONG:  Yes.

10         THE COURT:  Okay.  And did she leave your

11   residence?

12         MR. LONG:  Yes.

13         THE COURT:  Okay.  That was to -- when did this

14   conversation take place?

15         MR. LONG:  I just had called Pretrial Services --

16         THE COURT:  Today? So it took place today?

17         MR. LONG:  Yeah, today.

18         THE COURT:  Okay.  Now, where will the defendant be

19   staying?

20         MR. PADDEN:  I assume you can't -- you're not going

21   to stay with him, right?

22         THE DEFENDANT:  No.

23         MR. PADDEN:  Where will you stay?

24         THE DEFENDANT:  At the house.

25         MR. PADDEN:  Well, isn't he at the house?

11

1           THE DEFENDANT:  Yeah.

2           MR. PADDEN:  Do you have another place you can stay

3     till Monday?

4           THE DEFENDANT:  (Inaudible.)

5           MR. PADDEN:  Well, you're going to have to come up

6     with some other -- do you have friends?  (Inaudible.)  Do you

7     have friends you can stay with and not be at home with him?

8           THE DEFENDANT:  Whether I want --

9           MR. PADDEN:  May I just take a moment, please?

10          THE COURT:  Yes.  And maybe our Pretrial Services

11     officer here has -- may have something to say.

12          PRETRIAL SERVICES OFFICER:  Your Honor, can I

13     (inaudible) is self-sustaining herself from her savings, and

14     she is actually paying for the rent (inaudible).  That is her

15     residence.

16          MR. PADDEN:  Good.  We didn't quite get that far.

17     If I had known that, obviously --

18          THE COURT:  Is that correct, Mr. Long, that she's

19     paying for the apartment?

20          MR. LONG:  She is -- the money is from my mom.  We

21     just got married.  We get money from mom.  And actually --

22          MR. PADDEN:  Your mom or her mom?

23          MR. LONG:  My mom.  My mom -- when we come back

24     from China, my mom just gave her $4,000 for starting new

25     life.

12

1          MR. PADDEN:  Gave it to her?  She have -- and you

2     have money and you're paying the rent?

3          THE DEFENDANT:  But he asked for loan -- asking for

4     a loan from his mom.

5          MR. PADDEN:  Yeah, yeah.  Okay.  But your -- but

6     the money --

7          THE COURT:  Okay.  Why don't you confer with her

8     for a minute and give me a proposal on what you think ought

9     to happen in the interim.

10          MR. SRINIVASAN:  And, Your Honor, when Mr. Padden

11     comes back, I'd just like to be heard briefly.

12          THE COURT:  Hmm?

13          MR. SRINIVASAN:  I would just like to be heard

14     briefly, just --

15          THE COURT:  Yes.  Of course.

16          (Pause.)

17          MR. PADDEN:  All right.  Well, if that's the case.

18     All right.  Let me explain that to the Judge.  Then maybe

19     that sounds (inaudible).  Is that -- we're ready to be back

20     on.

21          MR. SRINIVASAN:  Yeah.  We're on.

22          MR. PADDEN:  Well, Judge, I mean, I know that there

23     seems to be a little disconcerting here, because she feels

24     like she's paying the rent on where they're living and all,

25     even though he says that it originally came as a gift from

13

1      his mother to her.

2              But the bottom line is, Judge, if necessary, she

3      would stay in a hotel, if necessary.  And I would suggest,

4      with appropriate monitoring, keeping Pretrial informed of

5      where she is, and if necessary, electronic monitoring, or

6      location monitoring, and that would be satisfactory until we

7      can come in here on Tuesday and present a new bail package

8      that I think will probably involve either additional

9      suretors, or the offer of a cash bond in an escrow account or

10     something to secure her appearance in San Diego, which is

11     almost -- which is almost -- fairly imminent some time in --

12     June 6th, I believe, she's due in San Diego.

13             And there's been no problems with her except for

14     what he says she says, which he's even conceded was sort of

15     half joking.  Clearly the relationship is not going well.

16             So it's better they stay apart, I'm sure.  She will

17     stay in a hotel.  She has the funds to do that.  And she'll

18     keep them abreast of where she is and if you want a monitor

19     her electronically, we can do that.

20             THE COURT:  Is it possible to do that?

21             PRETRIAL SERVICES OFFICER:  It is possible, Your

22     Honor.  (Inaudible) anyone would be able to come to court on

23     a monitor (inaudible).  She had an ex-boyfriend had a

24     (inaudible).  I'm not sure if that would be (inaudible).

25             MR. PADDEN:  We're going to reach out, Judge.  She

14

1    says that she will try to find someone to come in.  But I

2    think, frankly, a cash bond -- I mean, this -- we're only

3    talking about a few days until she gets to San Diego, and it

4    doesn't that seem on this -- given the nature of the charges

5    here and her up until now non-issue with respect to Pretrial

6    supervision, and I still think it's pretty much a non-issue,

7    but --

8                 PRETRIAL SERVICES OFFICER:  (Inaudible.)  Yes, we

9    (inaudible).

10                MR. PADDEN:  Yeah.  She can't go anywhere.

11                MR. SRINIVASAN:  Your Honor, so I hear Mr. Padden's

12   position and I certainly think this was available case in the

13   original instance and we consented to a bail package that was

14   fairly easy to put together.

15                I think the material circumstances that have

16   changed are you're hearing some inconsistent statements made

17   to the Pretrial officer about her ties.  We all know that she

18   has minimal ties to the United States and she's a foreign

19   national.

20                And this is where, at least in my experience, Your

21   Honor, we have a sworn statement from the suretor about the

22   defendant making statements about traveling to Mexico talking

23   to a co-defendant.

24                I think that these are unique circumstances,

25   although, you know, I agree this is not a -- it's not a

1    dangerous crime.  It's not a crime involving large amounts of

2    narcotics, or the kinds of cases this court usually sees.

3           The unusual circumstances are there seems to be a

4    real risk of flight based on -- based on these contacts.

5    Based on the lack of ties to United States.  So --

6           THE COURT: Can I just get some background

7    information.  I don't (inaudible, microphone malfunction.)

8           UNIDENTIFIED FEMALE:  -- (inaudible) services

9    (inaudible).

10          MR. SRINIVASAN:  Your Honor, my understanding is

11    that the defendant's, I think, primary residence was in

12    Mexico and she traveled to the United States for work.  I

13    think that it indicates she began renting a room in Flushing

14    Queens in October 2016 when she was in the country.

15          But I think that her primary ties are to Mexico

16    where I think -- I think Mr. Padden indicates she has a

17    business there.

18        (Pause.)

19          THE COURT:  (Inaudible) any meaningful ties to

20    (inaudible).

21          MR. PADDEN:  I agree, Judge.  I mean, I'm not

22    trying to claim that there are all strong ties, but the

23    nature of the charges, the fact that she's been under

24    Pretrial supervision for almost a month, the fact that she's

25    due in court in another week or so, the fact that she can

16

1    probably come in and post at least a cash bail, if not bring

2    in someone, a friend or a friend of a friend, or somebody to

3    be willing to sign on the bond.  On -- and I'm just asking

4    for you to consider that on Tuesday.  She has to put together

5    a package.

6          MR. SRINIVASAN:  Your Honor, I'm not prejudging a

7    bail package that Mr. Padden might offer.  I'm just saying in

8    the meantime, I think remand is appropriate.

9          THE COURT:  I think if you're making an offer of a

10   cash bail, we should set it now and then (inaudible) in the

11   interim we can have (inaudible).

12         MR. PADDEN:  Yeah.  Okay.  Whatever you want,

13   Judge.  I just think it's kind of absurd to put her in jail

14   given everything in this case.

15         THE COURT:  Right.

16         MR. PADDEN:  Whatever else you want is fine with

17   me.

18         THE COURT:  Okay.  In the interim, we'll have --

19         MR. PADDEN:  Yeah.

20         THE COURT:  -- the monitoring, location monitoring.

21         MR. SRINIVASAN:  Understood, Judge.  We would also

22   ask a condition be added for no contact with the co-

23   defendant, Alan Ren.

24         MR. PADDEN:  If that's what it takes, that's what

25   it takes.  But that was never a condition initially.

17

1          MR. SRINIVASAN:  That's -- he's right.

2          THE COURT:  That's true.  But I think -- I think it

3     may be appropriate in light of the recent (inaudible).

4          MR. PADDEN:  Yeah.  I'm not objecting to that

5     Judge.  I'm not objecting to that.

6          THE COURT:  I'm going to set the cash bail for half

7     the amount of the bond.

8          MR. PADDEN:  Yeah.  I can do the math.  All right,

9     Judge.

10         THE COURT:  Okay.  Lawyers are notorious for being

11    bad at math.

12         MR. PADDEN:  Well, that's -- that's simple enough

13    for me.  Anything more complicated -- if you had said a

14    fraction other than a half, I might have had a problem.  That

15    would -- (inaudible) be more difficult for me.  So $25,000

16    cash.  And do you want to set a date and time which that has

17    to be posted?

18         THE COURT:  (Inaudible) you can offer an

19    alternative (inaudible).

20         MR. PADDEN:  All right.  So you want to put this on

21    the calendar for Tuesday then?  Does that make sense or does

22    that --

23         THE COURT:  (Inaudible.)

24         MR. PADDEN:  Yeah.

25         THE COURT:  (Inaudible.)

18

1          MR. PADDEN:  Sure.  I happen to know just

2    fortuitously Mr. Kirchheimer is on duty on Tuesday.  So

3    whatever you want.

4          THE COURT:  (Inaudible.)

5          MR. SRINIVASAN:  Yes, Judge.  What time would the

6    Court like us to --

7          MR. PADDEN:  Eleven o'clock.

8          MR. SRINIVASAN:  Eleven o'clock?  (Inaudible.)

9          MR. PADDEN:  Well, wait.  Well, Peter is on duty.

10   So ask for 2 o'clock.

11         MR. SRINIVASAN:  Two o'clock.

12         MR. PADDEN:  Two o'clock.

13         THE COURT:  Okay.  And she's going to have to stay

14   (inaudible) --

15         MR. PADDEN:  Pretrial will --

16         THE COURT:  -- (inaudible) --

17         MR. PADDEN:  Okay.

18         THE COURT:  -- the monitoring then  (inaudible) --

19         PRETRIAL SERVICES OFFICER:  Current residence

20   (inaudible) an issue that they need to resolve --

21         THE COURT:  Well, we can resolve that now because

22   he's here.  Yes?

23         MR. LONG:  Where's -- of bond issue.  We're not

24   talking about the person who's here --

25         THE COURT:  Okay.  So she can stay --

19

1          MR. LONG:  Yeah.  She can stay.

2          THE COURT:  Okay.

3          MR. LONOG:  Well, I'll -- just want to take off the

4     responsibility --

5          THE COURT:  Okay.  The hearing is continued till

6     (inaudible).

7          MR. PADDEN:  Okay.  I'll explain in a moment.  You

8     have to come back here on Tuesday at 2:00 p.m.  Okay.  Your

9     bail is going to be -- you're going to have to come up with

10    $25,000 cash bail.  I'll explain to you on how you can put

11    that in an account or something.  We'll talk about that.

12    Okay.

13         MR. SRINIVASAN:  Judge, are you going to advise her

14    of the condition --

15         MR. PADDEN:  In the meantime, Pretrial Services is

16    going to put an electronic monitor on you to make sure you

17    don't leave.  Okay.  You got that?  Okay.  All right.

18         THE COURT:  So --

19         MR. PADDEN:  So, I think, well, let's finish with

20    the Judge, and I'll talk to you some more.

21         THE DEFENDANT:  And so will I be going to my house

22    or --

23         MR. PADDEN:  Just a second.  Yes.  Yes, yes, yes.

24         THE COURT:  I have crossed Mr. Long off the bond.

25         MR. PADDEN:  Right.

20

```
1           THE COURT:  I am modifying the release (inaudible)

2    required cash collateral of $25,000 (inaudible) continuation

3    of the bail hearing on Tuesday.

4           MR. PADDEN:  I got you.  Yes.

5           THE COURT:  And you can present a different bail

6    package should you be able to locate any surety.  I'm adding

7    the condition that the defendant not have any contact with

8    the co-defendant, Alan Ren.

9           MR. SRINIVASAN:  Spelled A-l-a-n, R-e-n.

10          THE COURT:  Okay.  And when I say no contact, that

11   means through any electronic means, face to face, or through

12   third parties.  Absolutely no sort of communication with him.

13          MR. PADDEN:  Understood, Judge, and I will make

14   that abundantly clear for her.

15          THE COURT:  Okay.  And then I -- this is not --

16   this is outside of my jurisdiction, but since we will both be

17   residing at the same place, I think it might be appropriate

18   for both of you to keep an appropriate distance with each

19   other and -- until you figure out some way of resolving any

20   difficulties you have in your relationship.

21          MR. PADDEN:  Okay.

22          THE CLERK:  Anything else?

23          MR. PADDEN:  I think that's it.

24          MR. SRINIVASAN:  Not from the government.  Thank

25   you, Judge.
```

21

1          THE CLERK:  Okay.  Thank you.

2          MR. PADDEN:  Thank you.

3      (Proceedings concluded at 4:11 p.m.)

4      I, CHRISTINE FIORE, Certified Electronic Court Reporter

5  and Transcriber, certify that the foregoing is a correct

6  transcript from the official electronic sound recording of

7  the proceedings in the above-entitled matter.

8

9      _Christine Fiore_

10  _____          October 17, 2017

11      Christine Fiore, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24